# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:16-CV-00141-TBR

J & J SPORTS PRODUCTIONS, INC.                      Plaintiff,

v.

JOSE E. CAMACHO, *individually and*
*d/b/a* El Rincon Cuban Restaurant, *et al.*,              Defendants.

## MEMORANDUM OPINION

J & J Sports Productions, Inc. filed this action against Jose E. Camacho and El Rincon Market & Café LLC, bringing claims under 47 U.S.C. §§ 553 and 605, along with a common-law claim for conversion, for broadcasting a pay-per-view program without authorization. In prior orders, the Court entered default against Camacho and El Rincon Market & Café LLC, and neither has acted since that time. Now, J & J Sports Productions has filed a motion for entry of a default judgment against them. Having carefully reviewed the record before it, the Court finds entry of a default judgment to be warranted. Accordingly, J & J Sport Productions, Inc.'s Motion for Entry of Default Judgment, [R. 21], is **GRANTED**.

### I.

### A.

J & J Sports Productions, Inc. is a closed-circuit distributor of sports and entertainment programming. [R. 21-4 at 2, ¶ 3 (Gagliardi's Affidavit).] It purchases the commercial exhibition rights to programming including, as pertinent to this action, those related to *"Toe to Toe": Saul Alvarez v. Alfredo Angulo Light Middleweight Championship Fight Program*, which was broadcast on March 8, 2014. [*Id.*] J & J

1

Sports Productions, in turn, sublicenses those exhibition rights to commercial establishments for a fee based on the capacity of the location in question. [*Id.*]

Unsurprisingly, there are many who wish to exhibit popular sports programming but remain unwilling to pay for the privilege. [*Id.*, ¶ 4.] To make sure those businesses pay their fair share, J & J Sports Productions dispatches investigators to local bars and restaurants on the nights of major showings, including the broadcast of *"Toe to Toe": Saul Alvarez v. Alfredo Angulo Light Middleweight Championship Fight Program*, to catch "signal pirates" in the act. [*Id.* at 2–3, ¶¶ 5–6.]

Jose E. Camacho is a managing member of El Rincon Market & Café LLC, which owns and operates the El Rincon Cuban Restaurant, an establishment located in Louisville, Kentucky. [R. 1 at 2, ¶¶ 7 (Complaint).] An investigator for J & J Sports Productions, David Lee Bringer, visited the El Rincon Cuban Restaurant on the night of March 8. [R. 21-3 at 1, ¶ 3 (Bringer's Affidavit).] Inside the establishment, Bringer observed three televisions exhibiting *"Toe to Toe": Saul Alvarez v. Alfredo Angulo Light Middleweight Championship Fight Program*. [*Id.* at 3, ¶¶ 12–13.] El Rincon Market & Café LLC, however, had not entered into a sublicensing agreement with J & J Sports Productions to exhibit that program. [R. 21-4 at 3, ¶ 7.] Had Camacho and El Rincon Market & Café LLC paid for the right to exhibit that program, the cost would have been $1,200.00. [*Id.* at 11 (Rates).]

**B.**

J & J Sports Productions sued Camacho and El Rincon Market & Café LLC, bringing claims under 47 U.S.C. §§ 553 and 605, along with a common-law claim for conversion, for broadcasting the program without appropriate authorization. [R. 1 at 4–7,

¶¶ 15–33.] El Rincon Market & Café LLC were served with copies of the complaint and summons on September 7, 2016. [R. 7 at 1–2 (Proof of Service); R. 11-1 at 1 (Affidavit for Entry of Default).] Camacho was served with copies of the same on October 4, 2016. [R. 14 at 3 (Proof of Service); R. 15-1 at 1 (Affidavit for Entry of Default).] However, neither appeared or filed an answer (or any other pleadings) to defend against this action. The Court entered default against El Rincon Market & Café LLC on October 13, 2016. [R. 12 (Entry of Default).] It entered default against Camacho on April 4, 2017. [R. 16 (Entry of Default).] No action has been taken by either Camacho or El Rincon Market & Café LLC since default was entered. Now, J & J Sports Productions moves for entry of a default judgment against them. [R. 21 (Motion for Entry of Default Judgment).]

## II.

Upon default, the Court takes as true all factual allegations in the complaint except those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see also Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995). Even after the entry of default, however, the decision "to grant a default judgment is within the Court's discretion." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). In determining whether to enter a default judgment, courts in this Circuit typically consider factors such as:

> [1] the amount of money potentially involved; [2] whether material issues of fact or issues of substantial public importance are at issue; [3] whether the default is largely technical; [4] whether plaintiff has been substantially prejudiced by the delay involved; [5] and whether the grounds for default are clearly established or are in doubt.

10A Charles A. Wright et al., *Federal Practice and Procedure* § 2685 (4th ed.), Westlaw (database updated Apr. 2017) (footnotes omitted).

3

## III.

J & J Sports Productions moves for entry of a default judgment on its claim under 47 U.S.C. § 605 or, in the alternative, on its claim under 47 U.S.C. § 553.[1] [R. 21 at 1–2.] The Court holds entry of a default judgment to be warranted on J & J Sports Productions' § 553 claim. However, the same cannot be said for its § 605 claim.

Section 553 prohibits any person from "intercept[ing] . . . any communications service offered over a cable system" without specific authorization. 47 U.S.C. § 553(a)(1). Section 605, in turn, prohibits any person from "intercept[ing] any radio communication," *id.* § 605(a), which includes satellite signals, *see United States v. One Macom Video Cipher II, SN A6J050073*, 985 F.2d 258, 260 (6th Cir. 1993). It is well-established that courts will not award statutory damages under both § 605 and § 553 where those claims arise from a single set of operative facts. *Joe Hand Promotions, Inc. v. Streshly*, 655 F. Supp. 2d 1136, 1137 (S.D. Cal. 2009) (citing *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999); *Joe Hand Promotions, Inc. v. Dailey*, No. C 01-4219, 2003 WL 1342998, at *2 (N.D. Cal. Mar. 13, 2003)); *accord J & J Sports Prods., Inc. v. Main Hookah Lounge, LLC*, No. 14-CV-01075-W-DGK, 2015 WL 6457300, at *2 (W.D. Mo. Oct. 26, 2015); *see also TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001); *United States v. Norris*, 88 F.3d 462, 469 (7th Cir. 1996).

Here, J & J Sports Productions asks for judgment under § 605 or, in the alternative, under § 553. [R. 21-2 at 8 (Memorandum in Support).] While J & J Sports Productions has adduced sufficient evidence to show that the broadcast in question was

---

[1] J & J Sports Productions, Inc. appears to have abandoned its common-law conversion claim. Accordingly, the Court need not address it.

unlawfully intercepted, [*see* R. 21-3 at 1–2; R. 21-4 at 3, ¶ 7], it has not demonstrated that the interception was more likely of a satellite transmission than of a cable transmission. Accordingly, the Court will treat the interception as that of a cable transmission, which § 553 prohibits. *See Joe Hand Promotions, Inc. v. Dick*, No. 5:15-CV-00202-TBR, 2017 WL 1313792, at *2 (W.D. Ky. Apr. 5, 2017).

A person aggrieved by a violation of § 553, such as J & J Sports Productions, may bring a civil action to recover actual or statutory damages, full costs, and attorney's fees. 47 U.S.C. § 553(c)(1), (2)(B)–(C). In way of statutory damages, the aggrieved party may recover an award "in a sum of not less than $250 or more than $10,000" as the Court "considers just." *Id.* § 553(c)(3)(A)(ii). If the violation was willful and for purposes of commercial advantage or private financial gain, then the Court may in its discretion "increase the award of damages . . . by an amount of not more than $50,000." *Id.* § 553(c)(3)(B). On the other hand, if the "violator was not aware and had no reason to believe his acts" violated the law, then the Court may in its discretion "reduce the award of damages to a sum of not less than $100." *Id.* § 553(c)(3)(C).

From the affidavit of Joseph M. Gagliardi, the President of J & J Sports Productions, the Court is satisfied that the program was not "mistakenly, innocently, or accidentally intercepted." [R. 21-4 at 3–4, ¶ 9.] It seems apparent that the interception was for private financial gain too. [*Id.* at 5–6, ¶¶ 15–17.] Based on J & J Sports Productions' pricing structure, Camacho and El Rincon Market & Café LLC ought to have paid J & J Sports Productions around $1,200.00 for a sublicense to broadcast the program. [*Id.* at 11; R. 21-3 at 1, ¶ 3.] Instead, J & J Sports Productions spent $2,043.16 to prosecute this action. [R. 21-6 at 1 (Cooper's Affidavit).]

Having carefully reviewed the record, the Court finds statutory damages in the amount of $2,400 to be appropriate and within the typical range awarded in this District. *See Dick*, 2017 WL 1313792, at *3 (collecting cases). An award of $2,043.16 to cover J & J Sports Productions' costs and attorney's fees is reasonable too. *See* 47 U.S.C. § 553(c)(2)(C). Therefore, the Court will enter judgment against Camacho and El Rincon Market & Café LLC in the amount of $4,443.16.

### IV.

J & J Sports Productions, Inc.'s Motion for Entry of Default Judgment, [R. 21], is **GRANTED**.

A separate order and judgment shall issue.

Date:

cc: Counsel of Record

    Jose E. Camacho
    8118 Preston Highway
    Louisville, KY 40219

    Gabriel Jamie Guzman
    Registered Agent
    El Rincon Market & Café LLC, d/b/a El Rincon Cuban Restaurant
    8118 Preston Highway
    Louisville, KY 40219